IN THE UNITED STATES DISTRICT COURT FOR WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAISON JONES**, | CIVIL ACTION NO. 2:23-cv-1777 |
| Plaintiff, | ELECTRONICALLY FILED |
| v. | JURY TRIAL DEMANDED |
| **STATE FARM FIRE AND CASUALTY COMPANY,** | |
| Defendant. | |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff, Jaison Jones, by and through his attorneys George R. Farneth II, Esquire and The Farneth Law Group, LLC, and files this Complaint in Civil Action, averring as follows.

### PARTIES

1. Plaintiff, Jaison Jones ("Plaintiff") is an adult individual who, at all times pertinent hereto, resided at 108 W. Burgess St., Pittsburgh, Allegheny County, Pennsylvania 15214.

2. Defendant, State Farm Fire and Casualty Company ("Defendant") was and is a foreign corporation which, at all times pertinent hereto, was authorized to and was doing business throughout the Commonwealth of Pennsylvania while maintaining its principal place of business at One State Farm Place, Bloomington, Illinois 61710.

3. Plaintiff believes and therefore avers that, at all times pertinent hereto, Defendant was in the business of selling insurance policies to individual and commercial customers throughout the Commonwealth of Pennsylvania, including but not limited to customers throughout the Western District of Pennsylvania, through independent and captive insurance agents.

4. At all times pertinent hereto, Defendant was acting by and through its authorized agents, servants, employees, and representatives, including but not limited to Stacy Rusich ("Rusich"), Fred Daniels ("Daniels"), and Michael Gerstein, Esquire ("Gerstein") who were then and there acting within the course and scope of their employment, pursuant to the authority they were given by Defendant, and for the economic gain and benefit of themselves and Defendant.

**JURISDICTION AND VENUE**

5. This action arises under the laws of the Commonwealth of Pennsylvania and is within the subject matter jurisdiction of this Honorable Court.

6. Plaintiff resides in the Western District of Pennsylvania.

7. Plaintiff purchased the insurance policy at issue in this case from Defendant in the Western District of Pennsylvania.

8. Defendant's principal place of business is in Illinois.

9. At all times pertinent hereto, Defendant was conducting business in the Western District of Pennsylvania and, therefore, it is subject to personal jurisdiction in this Honorable Court.

10. This Honorable Court has original jurisdiction over this civil action pursuant to 28 U.S.C. 1332 as complete diversity exists between Plaintiff and Defendant and the amount in controversy, without interest and costs, exceeds the jurisdictional limits of this Honorable Court as specified by 28 U.S.C. §1332.5.

11. Further, this Honorable Court has supplemental jurisdiction over Plaintiff's other claims pursuant to 28 U.S.C. 1367, because Plaintiff's other claims are part of the same case or controversy.

12. Venue in this Honorable Court is proper in accordance with the provisions of 28 U.S.C. §1391, in that all the claims set forth herein arose in the Western District of Pennsylvania.

## STATEMENT OF FACTS

## APPLICABLE INSURANCE POLICY

13. When Plaintiff originally sought insurance coverage, Defendant required Plaintiff to complete and submit a detailed application ("Application").

14. The Application required Plaintiff to disclose his race.

15. In the Application Plaintiff disclosed to Defendant that he is an African American.

16. Even though Defendant knew Plaintiff is an African American, it still issued him an automobile insurance policy and accepted all his premium payments.

17. At all times pertinent hereto, Plaintiff was insured pursuant to a policy of automobile insurance that was issued by Defendant bearing policy number 554204338 which provided bodily injury limits of $50,000 for each person and $100,000 for each accident, comprehensive coverage and car rental and travel expenses coverage for a policy period that ran from October 31, 2022 to April 30, 2023 ("Policy"). Since the original Policy is in the possession of Defendant, a copy of same is not attached hereto, but is incorporated herein by reference.

18. Based upon the terms, conditions, and definitions set forth in the Policy, there is absolutely no dispute that Plaintiff is entitled to coverage for the loss he suffered as detailed below.

19. The Policy was drafted exclusively by Defendant without any input from Plaintiff and, therefore, any ambiguities in the terms, conditions, and provisions of the Policy must be construed in favor of Plaintiff and against Defendant.

20. At all times pertinent hereto, Plaintiff paid timely and in full all premiums that were charged by Defendant with respect to the Policy and he timely and fully discharged all contractual

and other duties and obligations he owed to Defendant, including but not limited to all conditions precedent to Plaintiff's entitlement to coverage under the Policy.

21. There is absolutely no disputing the fact that the Policy was in full force and effect at the time of the loss Plaintiff suffered as described herein as Defendant has not only acknowledged Plaintiff's claim, but it has otherwise never asserted that the Policy had been cancelled, was otherwise not in effect at the time of the loss detailed below, or that Plaintiff is not eligible for coverage for the loss he suffered.

## FACTUAL BACKGROUND

22. Prior to and on January 9, 2023 Plaintiff was the owner of a white 2010 Chevrolet Traverse bearing Pennsylvania license plate number LGL-9214 ("Vehicle")

23. On January 9, 2023 the Vehicle was stolen from Plaintiff's home located at 108 W. Burgess St., Pittsburgh, PA 15214.

24. As soon as Plaintiff discovered the Vehicle had been stolen, he reported it to the City of Pittsburgh Police Department at the Zone 1 police station.

25. Plaintiff then promptly informed Defendant that the Vehicle had been stolen and he submitted to Defendant a claim under the Policy.

26. On January 10, 2023 Plaintiff submitted to Defendant an Affidavit of Vehicle Theft.

27. The claim Plaintiff submitted included a request for reimbursement for the value of the Vehicle, for a rental car, and for some lost personal items ("Claim").

28. Plaintiff was entitled to have the Claim promptly paid pursuant to the Policy.

29. Defendant assigned Rusich to handle the Claim.

30. Plaintiff believes Defendant and/or Rusich assigned claim number 38-44C6-73F to the Claim.

31. By letter dated January 12, 2023 Defendant and Rusich advised Plaintiff that his Claim had been reassigned to Defendant's Special Investigative Unit.

32. By letter dated January 31, 2023, without providing a detailed explanation of his or Defendant's position, Daniels informed Plaintiff that Defendant "may have no duty to pay, indemnify, defend, or otherwise perform under the policy…." "It is questionable whether there has been compliance with the condition of the policy requiring the assistance and cooperation of the insured." "A question exists as to whether there has been concealment and material misrepresentation made by you following the loss." "It is questionable whether there has been direct, sudden and accidental damage or total or partial theft of property covered by the physical damage coverages of the policy."

33. On February 3, 2023 Rusich and Defendant sent Plaintiff an automated letter indicating their "investigation of your claim is pending one or more of the following:

Determination of Coverage

Determination of Liability

Receipt of Requested Documents or Information

Review of Documents and Information Provided

Completion of Vehicle Inspection and/or Repairs

Completion of the Medical Kit

Reaching an Agreement on Value of your Injury Claim

The Completion of Applicable Policy Provisions"

34. Rusich and Defendant sent Plaintiff similar automated letters dated February 4, 2023, March 15, 2023, and March 16, 2023.

35. At least three of the purported reasons Rusich and Defendant gave Plaintiff in the automated letters for their investigation still being pending are not in any way applicable to the Claim and, therefore, they should not have been included in the letters Defendant sent to Plaintiff.

36. At the request of Defendant, by and through Rusich, Plaintiff provided a recorded statement regarding the loss ("Statement").

37. After Plaintiff provided the Statement, Defendant, by and through Rusich, demanded that Plaintiff supply certain addition documents and materials, including the following:

> a. A current copy of your credit report. You may obtain a copy free of charge using the government sponsored website: Annual Credit Report.com - Home Page OR you can sign the financial authorization form previously directed to you which will allow State Farm to access your credit report;
> b. T-Mobile phone and text records for a period of 01/01/23 – 01/10/23;
> c. Screen shots of your "What's App" call history for a period of 01/01/23 – 01/10/23;
> d. Proof of your hotel stay the weekend the Traverse went missing;
> e. Any photographs you may have of the 2010 Traverse;
> f. Any maintenance records you may have for the 2010 Traverse;
> g. A copy of the title (front and back) for the 2010 Traverse;
> h. Photographs of the key for the 2010 Traverse; and
> i. Details for the previous theft loss for the 2010 Traverse, including where/when the vehicle went missing, how/where it was recovered, condition upon recovery and invoices for any repairs completed as a result of damages from the theft.

("Documents").

38. The Documents Defendant, Rusich, and Daniels demanded were not only onerous and unreasonable, but also made clear that Defendant believed Plaintiff was somehow involved in the theft of the Vehicle or he knew who was.

39. In doing so, Defendant, Rusich, and Daniels effectively accused Plaintiff of engaging in criminal conduct and/or insurance fraud, even though they had no evidence to support their accusations.

40. Plaintiff believes that Defendant, Rusich, and Daniels do not demand the Documents from Caucasians who submit similar claims.

41. Despite the foregoing, Plaintiff promptly provided Defendant with all the Documents he had in his possession.

42. Defendant next demanded that Plaintiff sit for an Examination Under Oath.

43. Plaintiff believes that Examinations Under Oath are not part of an insurance company's routine processing of a claim, but rather are typically used only when the insurance company suspects fraud or criminal activity and/or where the insurance company wants to further delay the payment of the Claim, intimidate their insured, and/or conduct a "fishing expedition."

44. On May 9, 2023 Plaintiff sat for an Examination Under Oath that was taken by Gerstein.

45. The Examination Under Oath lasted nearly three hours, included significant questioning that was not necessary or reasonable for purposes of investigating and evaluating the Claim, and was specifically designed and intended to harass and intimidate Plaintiff and further delay the payment of the Claim.

46. Even though the Examination Under Oath confirmed the Claim was legitimate and should be promptly paid under the Policy, to date, Defendant has failed and refused to timely pay the Claim and provide all the benefits to which Plaintiff is entitled under the Policy.

47. Plaintiff believes that on or before September 26, 2023 Gerstein submitted to Defendant his opinion regarding coverage and whether the Claim should be paid ("Opinion").

48. Despite the passage of at least two additional weeks since it received the Opinion, Defendant has still communicated with Plaintiff or paid the Claim.

49. Plaintiff also believes Defendant may have instructed Gerstein to find a way to deny the Claim.

50. To date, Defendant has failed and refused to provide an explanation of its position in writing, including the basis for its failure to timely pay the Claim and all the benefits to which Plaintiff is entitled under the Policy.

51. To date, Defendant has not provided Plaintiff with any evidence that allegedly proves Plaintiff was involved in the theft of the Vehicle or that he knows who was.

52. The simple fact is that Defendant has not provided such evidence because it does not exist, as Plaintiff was not involved in the theft of the Vehicle and he does not know who was.

53. Plaintiff believes the evidence will show that in handling the Claim, Defendant, Rusich, and Daniels have discriminated against Plaintiff based on his race.

54. Plaintiff also believes the evidence will show that Defendant, Rusich, and Daniels have a policy and/or history of discriminating against African Americans who submit claims.

55. Plaintiff also believes the evidence will show that while Defendant is willing to issue insurance policies to African Americans and have them pay for the insurance policies, when it comes to investigating claims submitted by African Americans Defendant, Rusich, and Daniels do not treat those claims the same way as they treat claims submitted by Caucasians, they do not pay those claims with the same expediency and urgency as they do claims submitted by Caucasians, and they do treat their Caucasian policy holders like criminals the way they do their African American policyholders as they have Plaintiff.

## COUNT I

## **BREACH OF CONTRACT**

56. Plaintiff incorporates herein by reference as though fully set forth at length the averments set forth in paragraphs 1 through 55 above.

57. At all times pertinent hereto, Plaintiff paid in full all premiums that were charged by Defendant with respect to the Policy and he fully discharged all contractual and other duties and obligations he owed to Defendant, including but not limited to all conditions precedent to his entitlement to coverage for the Claim and benefits under the Policy.

58. Pursuant to the terms, conditions, and provisions of the Policy, it is undisputed that Plaintiff is an insured, he is entitled to coverage for the Claim and all related benefits available under the Policy, and Defendant had and has a duty to provide that coverage and pay those benefits to Plaintiff.

59. For the reasons set forth above, Plaintiff is entitled to, and Defendant should have promptly paid the Claim.

60. In accordance with Pennsylvania law, at all times pertinent hereto, Defendant has had a duty to fully, properly, fairly, accurately, and timely investigate, evaluate, process, pay, and resolve the Claim which it has failed to do.

61. Defendant has failed and refused to fully, properly, fairly, accurately, and timely investigate, evaluate, process, pay, and resolve the Claim.

62. Defendant's actions and inactions as set forth above constitute not only a violation of Pennsylvania law, but also a breach of the contractual duties and obligations Defendant owes Plaintiff under the Policy.

63. As a sole, direct, proximate, factual, and legal result of Defendant's violation of Pennsylvania law and breach of the contractual duties and obligations it owes Plaintiff as set forth above, the Claim has not yet been fully, properly, fairly, accurately, and timely investigated, evaluated, processed, negotiated, and paid which, in turn, has caused and will continue to cause

Plaintiff to incur a substantial amount of attorneys' fees and costs until such time as the instant action is resolved.

64. As a sole, direct, proximate, factual, and legal result of Defendant's failure and refusal to fully, properly, fairly, accurately, and timely investigate, evaluate, process, negotiate, and pay the Claim and breach of contract, Plaintiff has been deprived of the benefits of the contractual bargain he reached with Defendant.

65. Defendant's failure and refusal to fulfill its contractual, fiduciary, statutory, and other duties and obligations as aforesaid is contrary to existing Pennsylvania law, renders Defendant guilty of bad faith, and entitles Plaintiff to damages for annoyance, aggravation, inconvenience, and the expense of filing and prosecuting this lawsuit, including attorneys' fees and costs, all economic and non-economic damages recoverable under Pennsylvania law, and punitive damages.

WHEREFORE, Plaintiff, Jaison Jones, demands judgment in his favor and against Defendant, State Farm Fire and Casualty Company in an amount in excess of $75,000, together with punitive damages, interest, attorneys' fees, costs, and such other relief as this Honorable Court deems appropriate.

## COUNT II

### BAD FAITH/VIOLATION OF THE PENNSYLVANIA BAD FAITH STATUTE 42 PA. C.S.A. §8371

66. Plaintiff incorporates herein by reference as though fully set forth at length the averments set forth in paragraphs 1 through 65 above.

67. On or about February 7, 1990, the Governor of Pennsylvania signed into law 42 Pa. C.S.A. §8371 which became effective July 1, 1990 entitled, "Actions on Insurance Policies" which provides for a private cause of action for bad faith against insurance companies as follows:

   a. in actions arising under an insurance policy, if the Court finds that the insurer has acted in bad faith towards the insured, the Court may take all the following action:

      1. award interest in the amount of the claims from the date that the claims were made by the insured in an amount equal to prime rate of interest plus 3%;

      2. award punitive damages against the insurer; and

      3. assess Court costs and attorneys' fees against the insurer.

68. Under Pennsylvania law insurance companies owe a duty to their insureds to deal with them "on a fair and frank basis, and at all times, to act in good faith."

69. Defendant, through its agents, servants, employees and/or representatives including but not limited to Rusich and Daniels, has not acted in a fair and frank manor towards Plaintiff since the submission of the Claim, but rather they have continuously acted in bad faith towards Plaintiff.

70. The aforementioned actions and inactions of Defendant constitute bad faith conduct in violation of the Pennsylvania Bad Faith Statute as set forth 42 Pa. C.S.A. §8371, generally and in the following particulars:

   a. In issuing the Policy in a manner that caused confusion and provided Defendant with a means to substantially delay its determination of coverage and the investigation and payment of the Claim;

   b. In failing to timely investigate and determine if it would agree that Plaintiff did indeed have coverage under the Policy;

   c. In failing to timely investigate, evaluate, and pay the Claim and the other benefits to which Plaintiff is entitled;

   d. In failing to conduct a prompt, good faith investigation of the Claim;

e.  In failing to provide Plaintiff with a rental car;

f.  In failing to promptly and timely acknowledge, act upon, and respond to written and oral communications relating to the Claim, including the Opinion;

g.  In failing to timely correspond with Plaintiff regarding the Claim as required by law;

h.  In allowing inexcusable periods of inactivity to occur on multiple occasions since the Claim was first submitted to Defendant;

i.  In delaying the handling, negotiation, payment, and resolution of the Claim;

j.  In failing and refusing to tender to Plaintiff any settlement offers, let alone a reasonable offer to settle the Claim;

k.  in failing and refusing to maintain regular and required communication with Plaintiff regarding the Claim, generally and specifically after it receive the Opinion;

l.  In failing to act in good faith to effectuate a prompt, fair, and equitable resolution of the Claim;

m.  In failing to promptly provide a reasonable and detailed explanation of its investigation and evaluation of the Claim and the basis upon which Defendant was and is refusing to pay the Claim;

n.  In unreasonably delaying and not responding to the Claim;

o.  In unfairly and illegally discriminating against Plaintiff because of his race;

p.  In treating Plaintiff in a manner that is substantially different from the manner in which it treats its Caucasian policyholders who submit similar claims;

q.  In incorrectly and unreasonably assuming Plaintiff was somehow involved in the theft of the Vehicle or he knew who was;

r.  In failing to have a reasonable basis for refusing to timely pay the Claim, which Defendant knew and/or should have known it was/is obligated to pay under the circumstances;

s.  in acting and/or failing to act as a result of its own self-interest;

t.  in compelling Plaintiff to institute the instant litigation to recover the coverage and benefits to which he has been and continues to be entitled;

u. in failing to make any reasonable attempt whatsoever to negotiate and resolve the Claim;

v. in failing to advise Plaintiff of the substantive basis, either at law or pursuant to the Policy, for its refusal to timely pay and resolve the Claim;

w. in violating the Unfair Insurance Practices Act, 40 P.S. §1171.1, et seq.;

x. in failing to perform and timely discharge the contractual, fiduciary, statutory and other duties and obligations Defendant owes to Plaintiff under the circumstances; and

y. in violating the provisions of the Unfair Trade Practices and Consumer Protection Act, 73 P.S. §201-1, et seq.

71. Defendant's aforementioned actions and inactions were intentional, willful, wanton, and fraudulent, with ill-will and self-interest, and in reckless disregard of Plaintiff's rights and interests.

72. Defendant's aforementioned actions and inactions constitute an unfounded and unreasonable refusal to pay the Claim, based on incorrect and unreasonable assumptions, discriminatory policies and practices, and the financial interest and well-being of Defendant.

73. Defendant's failure and refusal to fulfil its contractual, fiduciary, statutory and other duties and obligations as aforesaid is contrary to existing Pennsylvania law and renders Defendant guilty of bad faith and entitles Plaintiffs to all of the damages allowable under Pennsylvania law and the Policy.

WHEREFORE, Plaintiff, Jaison Jones, demands judgment in his favor and against Defendant, State Farm Fire and Casualty Company in an amount in excess of $75,000, together with punitive damages, interest, attorneys' fees, costs, and such other relief as this Honorable Court deems appropriate.

## COUNT III

### VIOLATION OF THE UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT, 73 P.S. §201-1, et seq.

74. Plaintiff incorporates herein by reference as though fully set forth at length the averments set forth in paragraphs 1 through 73 above.

75. At all times pertinent hereto, Defendant was a seller, distributor, and supplier of goods and services, i.e., insurance policies, and, as such, Defendant was prohibited from engaging in unfair methods of competition and unfair or deceptive acts or practices in the conduct of its trade or commerce and the sale, supply and distribution of its goods and services, i.e., insurance policies.

76. Unfair methods of competition and unfair or deceptive acts or practices include the following, all of which Defendant engaged in:

   a. representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quality that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

   b. advertising goods or services with intent not to sell them as advertised; and

   c. engaging in any other fraudulent; or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 P.S. §201-1, et seq.

77. The conduct of Defendant as aforesaid was fraudulent and/or deceptive in that it represented to Plaintiff that if he paid the required premiums, he would receive insurance coverage under the terms and conditions set forth in the Policy.

78. The conduct of Defendant as aforesaid was fraudulent and/or deceptive in that Defendant represented that it was selling to and Plaintiff was purchasing from Defendant coverage for the Claim that Defendant did not intend to and, in fact, has not provided.

79. After Plaintiff paid timely and in full all premiums that were charged by Defendant with respect to the Policy, and he otherwise timely and fully charged all the contractual and other duties and obligations he owed to Defendant, including but not limited to all conditions precedent to his entitlement to coverage and benefits under the Policy, Defendant has derogated from its contractual obligations by failing and refusing to fully, properly, fairly, accurately, and timely investigate, evaluate, process, pay, and resolve the Claim.

80. Defendant's promise to provide coverage for the Claim pursuant to the terms and conditions of the Policy, was made by Defendant to induce Plaintiff to purchase its goods and services, i.e., insurance policy.

81. Plaintiff reasonably relied on Defendant's aforementioned misrepresentations to his detriment.

82. If Defendant had not made the aforementioned misrepresentations or engaged in its deceptive conduct, Plaintiff would not have purchased the Policy.

83. If Defendant had not made the aforementioned misrepresentations or engaged in its deceptive conduct, then Plaintiff would not have suffered the damages and losses referenced herein and Plaintiff would not have been compelled to commence the instant litigation.

84. The misrepresentations and other deceptive conduct of Defendant as aforesaid was the sole, direct, proximate, factual, and legal cause of the damages and losses that Plaintiff has sustained.

85. The Unfair Trade Practices and Consumer Protection Act, 73 P.S. §201-9.2, was designed to protect consumers, like Plaintiff, from the very conduct described herein.

86. In accordance with the provisions of the Unfair Trade Practices and Consumer Protection Act, 73 P.S. §201-9.2, Plaintiff may maintain a private action against Defendant to recover his actual damages.

87. In addition to his actual damages, Plaintiff should also be awarded treble damages and attorneys' fees and costs.

WHEREFORE, Plaintiff, Jaison Jones, demands judgment in his favor and against Defendant, State Farm Fire and Casualty Company in an amount in excess of $75,000, together with punitive damages, interest, attorneys' fees, costs, and such other relief as this Honorable Court deems appropriate.

## COUNT IV

### **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

88. Plaintiff incorporates herein by reference as though fully set forth at length the averments set forth in paragraphs 1 through 87 above.

89. Defendant, Rusich, and Daniels knew and/or should have known that if they discriminated against Plaintiff on the basis of his race, it would cause Plaintiff to suffer severe emotional distress.

90. Defendant, Rusich, and Daniels knew and/or should have known that if they essentially accused Plaintiff of criminal conduct and/or insurance fraud, it would cause Plaintiff to suffer severe emotional distress.

91. Plaintiff did, in fact, suffer severe emotional distress as any reasonable person would under similar circumstances.

WHEREFORE, Plaintiff, Jaison Jones, demands judgment in his favor and against Defendant, State Farm Fire and Casualty Company in an amount in excess of $75,000, together

with punitive damages, interest, attorneys' fees, costs, and such other relief as this Honorable Court deems appropriate.

                                                                                           Respectfully Submitted,

                                                                                           **THE FARNETH LAW GROUP, LLC**

Dated: October 14, 2023                                         By: */s/ George R. Farneth II*
                                                                                   George R. Farneth II, Esquire
                                                                                    *Attorneys for Plaintiff,*
                                                                                    *Jaison Jones*